**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3574-18T2

WATCHUNG HILLS REGIONAL
EDUCATION ASSOCIATION,

    Plaintiff-Appellant,

v.

BOARD OF EDUCATION OF
WATCHUNG HILLS REGIONAL
HIGH SCHOOL,

    Defendant-Respondent.

_____

Argued March 2, 2020 – Decided April 13, 2020

Before Judges Fasciale and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-1154-18.

William P. Hannan, II argued the cause for appellant (Oxfeld Cohen PC, attorneys; Sanford R. Oxfeld, of counsel; William P. Hannan, II, of counsel and on the brief).

Marc Howard Zitomer argued the cause for respondent (Schenck Price Smith & King, LLP, attorneys; Marc Howard Zitomer, of counsel and on the brief).

PER CURIAM

Defendant Board of Education of Watchung Hills Regional High School (the Board) employed Robert Myers (the employee) as a part-time bus driver. The Board and plaintiff Watchung Hills Regional Education Association (the Association) were subject to a Collective Negotiations Agreement (CNA), pertaining to the employee's employment and termination. The employee also had an individual employment contract with the Board. The CNA and the individual contract (the contracts) conflicted on permissible reasons for terminating the employee and the available steps to challenge a termination.

The individual contract gave the Board the right to terminate the employee without any reason on thirty-days' notice, and it did not establish a grievance procedure to challenge such a termination. The CNA, however, gave the Board the right to terminate the employee only for good and just cause, and unlike the individual contract, it outlined grievance steps an employee must follow to challenge a termination. The Board relied on the contracts and terminated the employee for completely inconsistent reasons. On the one hand, the Board terminated him under the no-reason provision of

the individual contract. On the other hand, the Board terminated him for cause under the CNA.

The employee challenged the termination for cause by correctly following the CNA's grievance procedure. The grievance proceeded to arbitration, where the arbitrator took testimony from numerous witnesses about whether the Board had good cause to terminate the employee. However, instead of resolving the good-cause dispute, and relying solely on the CNA's language in Step Five of its grievance procedure—which says no-reason terminations are not arbitrable—he dismissed the arbitration. The arbitrator did not resolve whether the Board had good cause, although he considered testimony on that subject.

The Association then filed this complaint. It did not seek to vacate the arbitrator's award, which was limited solely to his conclusion (indisputably correct) that under Step Five of the CNA, the no-reason termination was not arbitrable. Rather, the Association's complaint alleged that the CNA trumped the individual contract because the contracts were conflicting. The complaint also alleged that the Association established a cause of action seeking to challenge the good-cause termination because the Board gave inconsistent reasons for terminating the employee.

If the Board relied solely on the individual contract's no-reason termination provision and did not simultaneously claim it had good cause under the CNA, the Association might not have filed the complaint because the Association concedes that under the CNA, no-reason terminations are not arbitrable. We need not reach the question of whether a no-reason termination is justiciable if it is not arbitrable because the Association has not explicitly raised that issue.

Rather, the Association only contends the Board's good-cause termination is justiciable, meaning the judge should decide whether the Board had good cause to terminate the employee. The judge did not explicitly resolve the justiciability of whether the Board had good cause to terminate the employee under the CNA by analyzing the CNA's language. The CNA addressed the forum in which good-cause grievances must be heard: Article VII "Grievance/Arbitration Procedure" of the CNA states, "[t]he purpose of this Article is to provide for the expeditious and mutually satisfactory settlement of grievances and to that end the following procedures shall be the sole and exclusive method of resolution." (Emphasis added). Arguably, a good-cause challenge would therefore be arbitrable.

The complaint sought a declaratory judgment that the Board lacked good cause to terminate the employee. The complaint does not seek arbitration on

the good-cause issue despite the arbitrator's failure to resolve this issue. The Board then moved to dismiss the complaint under Rule 4:6-2(e). The judge did not consider whether the Association established a cause of action challenging the good-cause determination. Rather, the judge dismissed the complaint by applying—in part—the reasonably debatable standard used in actions seeking to vacate arbitration awards.

We reverse and remand for further proceedings consistent with this opinion. The employee is entitled to a resolution of whether the Board had good cause to terminate him. He has that right because the Board asserted a reason for his termination, and as a result, the CNA trumps the individual contract. On remand, the parties should address—by motion or otherwise—whether the CNA requires arbitration of the good-cause issue.

On appeal, the Association argues:

> POINT I
>
> [THE] STANDARD OF REVIEW OF A TRIAL [JUDGE'S] INTERPRETATION OF LAW. (NOT RAISED BELOW).
>
> POINT II
>
> THE [JUDGE] BELOW ERRED IN FINDING THAT [THE EMPLOYEE'S] TERMINATION WAS NOT JUSTICIABLE, EVEN THOUGH IT WAS FOUND BY AN ARBITRATOR TO BE SUBSTANTIVELY NOT ARBITRABLE.

A. The Trial [Judge] Erred When [He] Failed to Apply the New Jersey Supreme Court's Decision in <u>Jersey Central Power & Light</u> as Controlling Precedent in this Matter.

i. The [Judge] Below Incorrectly Applied the Reasonably Debatable Standard Used in Actions to Vacate Arbitration Awards.

ii. The [Judge] Below Erroneously Stated that the Arbitrator Heard the Matter on the Merits Despite the Arbitrator's Decision Stating the Contrary.

iii. The Arbitrator Dismissed the Grievance Based on Substantive Arbitrability, not Procedural Arbitrability.

b. The [Judge] Below Failed to Recognize that the Terms of [the Employee's] Individual Employment Contract Were Subsidiary to the CNA Governing His Employment.

We review an order granting a motion to dismiss de novo and we owe no deference to the trial court's conclusions. <u>Castello v. Wohler</u>, 446 N.J. Super. 1, 14 (App. Div. 2016); <u>Rezem Family Assocs., LP v. Borough of Millstone</u>, 423 N.J. Super. 103, 114 (App. Div. 2011). A motion to dismiss for failure to state a claim must be denied if, giving plaintiff the benefit of all his allegations and all favorable inferences, a claim has been established. <u>R.</u> 4:6-2(e); <u>see also</u> <u>Banco Popular N. Am. v. Gandi</u>, 184 N.J. 161, 165 (2005). The "inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint." <u>Printing Mart-Morristown v. Sharp Elecs. Corp.</u>, 116 N.J. 739, 746 (1989).

A-3574-18T2

II.

We accept the facts as alleged in the complaint. The Board terminated the employee because he left his supervisor a voicemail, which recorded him calling her a "bitch." The Board's Superintendent verified that the termination was "due to the voice mail." The Superintendent also notified the employee that the Board was terminating him in accordance with the thirty-day no-reason termination provision contained in his individual contract, which states:

> It is hereby agreed by the parties hereto that this contract may at any time be terminated by either party giving to the other [thirty] days['] notice in writing of intention to terminate the same, but that in the absence of any provisions herein for a definite number of days' notice the contract shall run for the full term named above.

Instead of a no-reason thirty-day termination provision, Article VIII of the CNA states: "<u>The Board shall not</u> suspend, discipline or <u>discharge any employee</u> (other than probationary employees) <u>except for good and just cause</u>."[1] (Emphasis added). Neither the judge nor the arbitrator analyzed whether the Board could have terminated the employee for no reason (under the individual contract) while at the same time, be limited (under the CNA) to terminating the employee solely for good cause. And if so, whether the CNA's language trumped the individual contract.

---

[1] Counsel represented that the employee is not a probationary employee.

The CNA outlines a grievance process for terminations, and defines grievance as "any dispute between the parties concerning the application, interpretation or claimed violation of any provision of this Agreement, or any administrative decision . . . which adversely affects the terms and conditions of employment as set forth in this Agreement."  Here, the employee invoked this procedure by disputing good cause.  Article VIII of the CNA imposes multiple grievance steps:

> Step [One]
>
> The Association or an employee with a grievance shall first discuss it with his immediate supervisor either directly or through the Association's representative within ten (10) working days after the employee knew or should have known of the event giving rise to the grievance.  Failure to act within the said ten (10) working days shall be deemed to constitute a waiver and abandonment of the grievance.
>
> Step [Two]
>
> If the aggrieved party is not satisfied with the disposition of the grievance at Step [One], or if no decision has been rendered within five (5) working days after the presentation of that grievance at Step [One], the Association may file within five (5) working days with the Business Administrator of the district a written grievance setting forth the nature of the grievance and designated contract provision(s) claimed to have been violated.
>
> . . . .

Step [Three]

If the aggrieved party is not satisfied with the disposition of the grievance at Step [Two], or if no decision has been rendered within seven (7) working days after the presentation of that grievance at Step [Two], the Association may file within five (5) working days with the Superintendent of Schools the written grievance.

. . . .

Step [Four]

If a grievance is not resolved at Step [Three], or if no written decision has been rendered within the allotted ten (10) working days set forth at Step [Three], the Association may, within ten (10) working days, make a written request for review by the Board[.]

. . . .

Step [Five]

A grievance to proceed to Step [Five] must be concerned with the interpretation, meaning or application of any of the provisions of this Agreement. The Board's exercise of the [thirty]-day no-reason termination clause of an employee's employment contract shall not be reviewable by binding arbitration. If a grievance is not resolved at Step [Four] or if no written decision has been rendered within the time allotted under Step [Four], the Association may, within ten (10) working days, make a written demand for arbitration to the New Jersey Public Employment Relations Committee[.]

The Association filed a grievance on the employee's behalf stating that the Board lacked good or just cause to terminate the employee. The Association followed Step One by presenting the grievance to the employee's immediate supervisor, who denied the grievance. It proceeded to Step Two by filing its grievance with the School Business Administrator, who also denied it. It then proceeded to Step Three and filed the grievance with the Superintendent, who also denied the grievance, stating: "There was ample cause . . . to terminate [the employee] for his unbecoming conduct." Pursuant to Step Four, the Association requested a hearing before the Board to determine the grievance. The Board conducted the hearing but denied the employee's grievance because "there was ample cause for [the employee's] termination." Thereafter, under Step Five, the Association made a demand for arbitration directly with the Public Employment Relations Commission (PERC). PERC selected the arbitrator. The parties expected the arbitrator to decide whether the good-cause grievance was arbitrable, and if so, whether the Board had good or just cause to terminate the employee.

At the arbitration, the Association argued that the Board waived the thirty-day no reason termination because it terminated the employee for cause. The Association also contended the termination language in the contracts conflicted, and therefore the CNA trumped the individual contract. It focused

10

on its good-cause challenge, arguing the Board failed to establish good or just cause to terminate the employee, specifically because the Board did not enforce its zero-tolerance policy on profanity. The Board argued that under Step Five of the CNA, the grievance was not arbitrable because the Board terminated the employee using the thirty-day no-reason termination clause. The Board contended it nevertheless had good and just cause to terminate him based on the voicemail.

Focusing on good cause, several teachers testified at the arbitration that the Board does not enforce its zero-tolerance policy on profanity. The arbitrator acknowledged the Association's argument that the Board gave inconsistent reasons for terminating the employee, but he dismissed the arbitration solely because Step Five of the CNA states no-reason terminations are not arbitrable. The CNA specifically expresses, "[t]he Board's exercise of the [thirty]-day no-reason termination clause of an employee's employment contract shall not be reviewable by binding arbitration." Therefore, the arbitrator concluded the grievance could not proceed on the merits because it was not "procedurally arbitrable," but he made no findings about good cause. The arbitrator also stated:

> The fact that the Board may have offered an additional reason for discharging the [employee] beyond its express right under the employment contract does not nullify the Board's ability to exercise the termination

11 <span>A-3574-18T2</span>

clause therein. It is for these reasons that the grievance is not arbitrable pursuant to the express language in the parties' Agreement[.]

Finally, the arbitrator emphasized: "[B]ased upon the foregoing and the entire record, I conclude that the evidence supports the Board's position that the grievance is not arbitrable and, therefore, cannot proceed to be heard on [the] merits."

At oral argument before us, counsel conceded the contracts are in conflict. Article VIII of the CNA provides only a good or just cause standard for termination. The individual employment contract allows a thirty-day no-reason termination. Our Supreme Court has held that individual employment contracts are "subsidiary to the terms of the . . . [CNA] and [they] may not waive any of its benefits." Mount Holly Twp. Bd. of Educ. v. Mount Holly Twp. Educ. Ass'n, 199 N.J. 319, 328 (2009) (first alteration in original) (quoting J.I. Case Co. v. NLRB, 321 U.S. 332, 336 (1944)). Here, the CNA gave the employee the benefit of challenging good cause. It is settled that "[t]o the extent provisions in an individual employment contract conflict or are inconsistent with terms in a [CNA], and diminish or interfere with rights provided by the CNA, the language in the individual contract must yield to the CNA." Id. at 329.

In Mount Holly, the employee's individual employment contract had a fourteen-day no-reason termination policy, and a termination under this provision was not arbitrable. Id. at 330. However, the parties' CNA stated "[n]o employee shall be discharged . . . without just cause," and just cause grievances were arbitrable. Ibid. (alterations in original). The defendant terminated the employee under the no-reason termination policy. Ibid. The Court found the two documents were in conflict, and the individual employment contract interfered with the employee's rights under the CNA. Ibid. It remanded for arbitration. Ibid.

Here, the Board argues that the contracts are consistent as to the no-reason termination provision. Indeed, if the Board's sole reason for terminating the employee was for "no reason," then the CNA is consistent because it states that such a basis for terminating an employee is not arbitrable. That is undisputed. But once the Board asserted that it had cause to terminate the employee because of the voicemail, the good and just cause reason for the termination revealed the contract's inconsistencies and entitled the employee to invoke his rights under the CNA.

Our ruling's practical effect is that the Board nullified the no-reason termination by giving the employee a reason for his termination. The CNA therefore trumps the individual contract, which entitles the employee to a

13

resolution of whether the Board had good cause to terminate him for the voicemail. On a <u>Rule</u> 4:6-2(e) motion, we therefore conclude that the Association established a cause of action seeking to challenge the good-cause determination. On remand, the parties should address the question in the first instance of whether the CNA requires arbitration of the good-cause issue. If the parties cannot agree, then they should engage in motion practice to resolve whether the CNA's language requires arbitration of the good-cause issue—an issue that was not resolved by the arbitrator or the judge.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3574-18T2